UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HENRI SILBERMAN,

           Plaintiff,

-against-

WIZARD + GENIUS AG,

           Defendant.

12 CV 4967

Case No.: JUDGE CEDARBAUM

**COMPLAINT**

JURY TRIAL DEMANDED

RECEIVED JUN 25 2012 U.S.D.C. S.D.N.Y. CASHIERS

Plaintiff Henri Silberman ("Silberman"), by its attorneys, Cowan, DeBaets, Abrahams & Sheppard LLP, for its Complaint against defendant Wizard + Genius AG ("W+G" or "Defendant"), alleges as follows:

## NATURE OF ACTION

1. Silberman is a well-known and highly respected photographer of some of the most iconic images of New York City and other major cities worldwide. This action arises out of W+G's: 1) improper attempt to usurp Silberman's copyright rights in his image; 2) blatant and willful failure to remit royalties to Silberman for posters produced and sold by W+G of Silberman's photographs; and 3) refusal to provide a complete and up-to-date accounting of recent sales in breach of their copyright license agreement.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a), 28 U.S.C. § 1332, and 28 U.S.C. §§ 2201(a) and 2202. Moreover, the matter in controversy, exclusive of interest and costs, exceeds $75,000 and there is complete diversity of citizenship.

{A073731.DOCX/1}

3. This Court has jurisdiction over Defendant because: 1) pursuant to the License Agreement between Silberman and W+G, the parties agreed to submit to the personal jurisdiction of courts located in the State of New York; and 2) upon information and belief, Defendant itself, and/or through its licensees, transacts and solicits business in the State of New York and in this judicial district.

4. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 (b)(3) and (c)(3).

## THE PARTIES

5. Plaintiff Silberman is an individual residing at 4329 Bermuda Avenue, Oakland, Alameda County, California, 94619.  Silberman is a photographer and author of copyrighted works licensed to W+G.

6. Upon information and belief, Defendant W+G is a business entity organized and existing under the laws of the country of Switzerland, with its principal place of business at Eichbüelstrasse 15 CH - 8618 Oetwil am See, Switzerland.  W+G is in the business of publishing and distributing art prints and posters worldwide.

## FACTUAL BACKGROUND

7. Silberman is an internationally renowned photographer whose iconic images of city streetscapes have been published and exhibited throughout the world.

8. Silberman's photographs are registered with the U.S. Copyright Office under Reg. Nos. VA 1-080-021, VAu 547-473, VAu 593-841, VAu 655-654, VAu 632-778, and VAu632-772.

9. Since 1989, Silberman has authorized W+G to serve as the exclusive licensee and distributor of poster-sized prints of many of Silberman's most popular images.

10. At all times over the course of their twenty year relationship, Silberman and

W+G's business relationship was governed by a series of copyright licensing agreements. Upon information and belief, W+G complied with its contractual obligations to provide Silberman with regular and timely accounting statements and royalty payments pursuant to those agreements.

11. On or about June 17, 2010, W+G entered into a new copyright licensing agreement (the "Licensing Agreement," a true and correct copy of which is annexed hereto as Exhibit 1), whereby Silberman granted to W+G an exclusive license to copy, print, reproduce, publish and/or sell poster-sized prints of approximately sixty-three (63) of Silberman's original photographs (each, a "Silberman Image" and together, the "Silberman Images") on posters throughout the world. The Licensing Agreement was set to expire on December 31, 2015, unless W+G provided Silberman with sixty days written notice that it would exercise its contractual option to renew. Licensing Agreement, ¶ 6.

12. At all relevant times, Silberman retained ownership of the copyrights in the Silberman Images.

13. In consideration of the license, W+G agreed to remit regular royalty payments to Silberman in the amount of 14% for each Silberman Image sold. *See* Licensing Agreement, ¶ 9.

14. Further, W+G agreed to prepare and furnish Silberman with royalty statements semi-annually, on June 30th and December 31st, respectively. *See* Licensing Agreement, ¶ 10.

15. According to its terms, W+G could only terminate the Licensing Agreement prior to its expiration, upon furnishing notice to Silberman. *See* Licensing Agreement, ¶ 13. Upon termination, all licensed rights in the Silberman Images would revert to Silberman. *Id.*

16. On November 29, 2011, Stuart Williams, a principal of W+G, contacted Silberman to request a meeting in San Francisco, CA.

17. On January 27, 2012, W+G directors Stuart Williams and Peter Friedli, along

{A073731.DOCX/1}

with Peter Friedli's daughter, Alexandra Friedli, met in San Francisco, California. During their meeting, Mr. Friedli, on behalf of W+G, expressed displeasure over its licensing arrangement with Silberman, complaining that W+G had been paying too much in royalties with respect to certain Silberman Images. Without justification, Mr. Friedli flippantly informed Silberman that W+G refused to pay any more royalties to Silberman for the second half of 2011, and that going forward, Silberman would only receive a fixed fee for future sales.

18. Mr. Friedli also indicated to Silberman that W+G wanted copyright ownership of a certain number of Silberman Images. Mr. Friedli proclaimed to Silberman that the copyrights in the Silberman Images were now W+G's, and there was nothing Silberman could do to stop it.

19. Shortly after their meeting, on January 30, 2012, Silberman emailed Stuart Williams to inquire about Silberman's outstanding semi-annual royalty statement and payment that was due and owing for the second half of 2011. Silberman's request and subsequent follow-up emails were ignored.

20. Ultimately, in or about mid-March, 2012, W+G sent Silberman a past-due royalty statement, for the period of July 1, 2011 through December 31, 2011, dated February 28, 2012, which, for the first time, excluded most, if not all, of Silberman's best-selling and most recognizable images, such as depictions of the Manhattan skyline and the Brooklyn Bridge—the very images that W+G claimed it would acquire.

21. Given the long history of significant sales of those "excluded" images, it is impossible to believe that there was not a single sale of posters bearing those images during that royalty period. Instead, upon information and belief, W+G's omission of sales of posters of Silberman's bestselling images from the royalty report is part of its campaign to usurp Silberman's copyright ownership in those images.

22. Notwithstanding W+G's contractual obligation to remit timely royalty statements and payments within forty-five days of December 31, 2011 (*see* Licensing Agreement, ¶ 10), on April 17, 2012, W+G deposited $6,372.43 into Silberman's bank account, without explanation. The $6,372.43 deposit did not correlate with the amount W+G claimed it owed to Silberman on its February 28, 2012 royalty statement. Upon information and belief, there is no justification for the discrepancy.

23. To date, W+G has not made any further payment of royalties for the period of July 1, 2011 through December 31, 2011, nor has it remitted any revised or updated royalty statements for that period in accordance with its obligations under Paragraphs 9 and 10 of the Licensing Agreement.

24. W+G's failure to furnish royalty statements and payments contradicts their longstanding practice with Silberman. For over twenty years, and under numerous prior agreements, W+G has abided by its express obligations to provide Silberman with regular and complete accounting reports and timely payments.

25. W+G's failure to render payment and account constitutes a material breach of the Licensing Agreement.

26. Upon information and belief, W+G continues to copy, print, reproduce, publish and/or sell the Silberman Images, and continues to be unjustly enriched by its failure to remit royalties based upon such sales that are due and owing to Silberman.

## FIRST CAUSE OF ACTION
(Declaratory Judgment)

27. Silberman realleges and incorporates herein by reference each and every allegation of paragraphs 1 through 26 above as though fully set forth herein.

28. As set forth herein, W+G has asserted that it has asserted ownership over the Silberman Images, and has failed to remit any further royalties on those images. Accordingly, an actual and justiciable controversy exists between the parties as to whether W+G has any copyright ownership in the Silberman Images.

29. Silberman is the sole author of the Silberman Images, and the sole owner of the copyright in those images.

30. Silberman has never assigned, sold, or otherwise transferred his copyright registrations in the Silberman Images to W+G.

31. Silberman has no adequate remedy at law.

32. Silberman is entitled to a declaratory judgment, pursuant to 28 U.S.C. §§ 2201 and 2202 and Fed. R. Civ. P. 57, stating that W+G has no copyright ownership in any of the Silberman Images.

## SECOND CAUSE OF ACTION
(Breach of Contract)

33. Silberman realleges and incorporates herein by reference each and every allegation of paragraphs 1 through 32 above as though fully set forth herein.

34. Silberman and W+G entered into a valid and binding Licensing Agreement, executed by the parties on June 17, 2010.

35. Silberman performed all of his obligations under the Licensing Agreement.

36. Under Paragraphs 9 and 10 of the Licensing Agreement, W+G agreed to pay

Silberman a 14% royalty on all sales of the Silberman Images and provide a royalty statement showing each such sale of the Silberman Images.

37. Notwithstanding those clear obligations, W+G breached the Licensing Agreement by failing to pay Silberman royalties that were properly due and owing to him and by refusing to provide a clear an accurate accounting statement.

38. As a result, Silberman has been damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Silberman prays for judgment against W+G as follows:

(a) seeking a declaration that W+G has no copyright ownership in any of the Silberman Images;

(b) judgment in favor of Silberman and against W+G in an amount to be determined at trial, plus interest and costs;

(c) an award of Plaintiff's costs and attorneys' fees, pursuant to 17 U.S.C. § 505;

(d) granting all such other and further relief as the Court may deem just and proper.

Respectfully submitted,

Dated: New York, New York
June 25, 2012

COWAN, DeBAETS, ABRAHAMS & SHEPPARD LLP

By: _____
Nancy E. Wolff
Matthew A. Kaplan
Joshua S. Wolkoff
41 Madison Avenue, 34th Floor
New York, New York 10010
Tel: (212) 974-7474
Fax: (212) 974-8474
NWolff@cdas.com
MKaplan@cdas.com
JWolkoff@cdas.com

*Attorneys for Plaintiff Henri Silberman*

7

{A073731.DOCX/1}

## **DEMAND FOR TRIAL BY JURY**

PLEASE TAKE NOTICE that Plaintiff, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, hereby demands trial by jury for all issues so triable.

Respectfully submitted,

Dated: New York, New York
June 25, 2012

COWAN, DeBAETS, ABRAHAMS & SHEPPARD LLP

By: *Nancy E. Wolff*
Nancy E. Wolff
Matthew A. Kaplan
Joshua S. Wolkoff
41 Madison Avenue, 34th Floor
New York, New York 10010
Tel: (212) 974-7474
Fax: (212) 974-8474
NWolff@cdas.com
MKaplan@cdas.com
JWolkoff@cdas.com

*Attorneys for Plaintiff Henri Silberman*

{A073731.DOCX/1}

# EXHIBIT 1



## COPYRIGHT AGREEMENT

1. **PARTIES TO THE AGREEMENT**
   The following shall constitute an agreement between
   **Wizard + Genius AG, 8618 Oetwil am See, Switzerland,**
   hereafter called the **PUBLISHER** and

   **HENRI SILBERMAN**
   408 Dragonfly Trail
   Chapel Hill, NC
   27517 USA
   Tel. +1 917 77 2587

   hereafter called the **PROPRIETOR**.

2. **WARRANTIES**
   The PROPRIETOR warrants that he is the true and lawful owner of the copyright in the work(s) mentioned below and has the sole right to grant the rights extended herein and that the work does not infringe the copyright or any other right of any third party. The PROPRIETOR also warrants that any previous licenses granted in the respect of the right hereby granted to the PUBLISHER are terminated. The PROPRIETOR shall indemnify PUBLISHER in the event of any breach of such warranty.

3. **THE WORK(S)**
   The work(s) herein consist(s) of the following original image(s)/photograph(s) created by the PROPRIETOR: **AS LISTED IN THE ANNEX TO THIS AGREEMENT.**

4. **GRANT OF LICENSE**
   The PROPRIETOR hereby grants to the PUBLISHER the sole, unlimited and exclusive license to copy, print, reproduce, publish and sell the work(s) throughout the world in VARIOUS PAPER FORMATS AS LISTED IN THE ANNEX TO THIS AGREEMENT

5. **COPYRIGHT**
   The grant to the PUBLISHER herein contained, is by way of license only and shall not confer on the PUBLISHER any right or interest in the copyright of the work. The PUBLISHER shall insure that all copies of the work produced pursuant to this agreement shall bear the universal copyright symbol © followed by the year the work was created and the name of the PROPRIETOR in compliance with the copyright law applicable to the reproduction of this work. Also, the copyright symbol of the PUBLISHER, the year of publication, and the address of the publisher. The PROPRIETOR's copyright shall read: Photograph © (year) by Henri Silberman. All Rights Reserved.
   The signature of the PROPRIETOR, Henri Silberman, shall appear prominently at the bottom of each print, if not otherwise agreed.



6. **TERM OF PUBLISHING**
The right to publish granted herein shall commence on January 1st, 2010 and terminate on December 31, 2015.

7. **ADVANCE PAYMENT**
As this agreement is the renewal of several earlier agreements, this contract is based on continuing royalties instead of an advance payment. The royalty percentage has been increased for this purpose (see § 9).

8. **GRATIS COPIES**
Upon publication, the PROPRIETOR shall be sent 10 gratis copies of all work(s) published in each size.

9. **ROYALTIES**
The PUBLISHER shall pay to the PROPRIETOR in respect of each copy of the work sold a royalty of 14 % percent of the PUBLISHER's average invoice price to any purchaser.

10. **STATEMENTS AND PAYMENTS**
A statement of the numbers of copies sold and of the sums due to the PROPRIETOR under this agreement shall be prepared as at June 30, and December 31, every year of this agreement and be submitted to the PROPRIETOR within 45 days together with a remittance in full payment of such sums due.

11. **NO ROYALTIES**
No royalty shall be payable in respect of any gratis copies of the work given to the PROPRIETOR, or in the interest of promotion or upon any copies lost, returned, damaged or destroyed in storage, transit or otherwise.

12. **EXTENDED TERM**
In the event PUBLISHER has faithfully performed each and every obligation of this agreement during the term, the PUBLISHER shall have the option to extend the term of this agreement for a second period of equal length, provided that PUBLISHER gives written notice thereof to PROPRIETOR, no later than 60 days preceding the effective date of such extended period.

13. **DISCONTINUANCE**
In the event PUBLISHER shall decide to discontinue publication of the work(s) prior to the expiration of the agreement, the PUBLISHER shall inform the PROPRIETOR in writing that the right to publish is being relinquished and the copyright shall revert to the PROPRIETOR at the end of the year. The PUBLISHER shall also inform the PROPRIETOR of the amount of copies still unsold and offer them to the PROPRIETOR.

14. **OPTION**
The PROPRIETOR agrees to grant the PUBLISHER the first option, limited to prints and Posters, for publishing any existing or future works, not covered in this agreement at the same conditions and under new contracts. Should the PUBLISHER decide not to produce such works within 45 days of viewing, the PROPRIETOR is free to work with other publishers, if the image is no overly similar to or in competition with a work licensed to the PUBLISHER. The PUBLISHER on the other hand gives the PROPRIETOR the first right for any black-and-white contemporary images of New York City Scapes.



### 15. SELL-OUT PERIOD
After expiration of this agreement PUBLISHER may, in compliance with all the terms and conditions hereof, dispose and sell-out those licensed articles which are on hand or in process at expiration for the period of 1 year.

### 16. INSPECTIONS
The PUBLISHER shall permit the PROPRIETOR, or his duly appointed representatives full access to the books and records of the PUBLISHER relating to the printing and sale of said reproduction, upon request for such examination being made in writing by the PROPRIETOR not less than 30 days before such access is required.

### 17. PROCEEDINGS
If at any time during the period of this agreement the PUBLISHER shall by written notice, require the PROPRIETOR to take or defend proceedings to protect or enforce his copyright either alone or in the joint names of the PROPRIETOR and the PUBLISHER, then the PROPRIETOR shall do so at the PUBLISHER's expense providing always, that such requirement is not made frivolously.

### 18. SUCCESSORS
This agreement shall be binding on and endure to the benefit of the parties hereto and their respective successors, assigns, licenses or agents.

### 19. JURISDICTION
This agreement shall be governed and construed in accordance with the Swiss laws and by the laws of the State of New York and the parties hereto agree irrevocably to submit to the jurisdiction of both Swiss courts and the courts of the State of New York.

### 20. ASSIGNMENT
The license to produce, sell and distribute the work(s) is granted only to the PUBLISHER and may not be assigned, sold or transferred in any manner without first obtaining written permission from the PROPRIETOR.
This agreement sets forth the entire understanding between the parties and no modifications, amendments or waiver of this agreement or any provision thereof shall be binding upon either party unless confirmed in written form and signed by both parties.

Agreed, Accepted and Signed by:

_____
Signed by the PROPRIETOR

Date: 6/17/10

_____
Signed by the PUBLISHER

Will am See, Switzerland
41 44 929 67 67
1 44 929 67 00
aliis@wizard.ch



## ANNEX TO THE AGREEMENT HENRI SILBERMAN OF JANUARY 1ST, 2010

List of the WORKS and their respective, present Codes.

| Work | Code(s) |
| --- | --- |
| Manhattan | 265 / 331 |
| From the Empire State Building | 117 |
| Chrysler Building | 521 |
| Prospect Park Morning | 8060 |
| Poet's Walk | 8479 / 3922 / 662 |
| Japanese Garden | 8061 |
| Gothic Bridge, Central Park, NYC | 8271 / 4074 |
| Joe on the Beach | 8065 / 4326 |
| Prospect Park Trees | 8059 / 4324 |
| Under Camperdown Elm | 9819 / 5767 |
| Prospect Lake Grasses | 9818 / 5766 |
| Escaliers à Montmartre, Paris | 8217 |
| Park Avenue at Night, NYC | 8148 / 3984 |
| Sky over Manhattan | 8077 / 8278 / 4085 |
| Manhattan | 8539 / 3868 |
| Manhattan East Side | 8235 / 4388 |
| Empire State Building at Night | 8114 / 4109 |
| Verrazano Bridge | 8272 / 4075 |
| Empire State Building | 6022 / 724 |
| Statue of Liberty | 6038 / 721 |
| Flatiron Building | 6021 / 722 |
| Saint Patrick's Cathedral, NYC | 6079 / 760 |
| Across Brooklyn Bridge | 720 |
| Chrysler Building | 6023 / 723 |
| New York Skyline | 6059 / 728 |
| Looking Up Fifth Avenue | 6072 / 741 |
| Clouds over Manhattan | 6020 |
| Views of New York I | 6086 |
| Brooklyn-Bridge | 6000 / 727 |
| Brooklyn Bridge 2007 | 6115 / 835 |
| Top of Chrysler Building | 8270 / 4073 |
| Flatiron | 8167 / 4190 |
| Flatiron Building at Night | 8133 / 3969 |
| Times Square Afternoon | 3872 / 5163 / 5618 |
| Chrysler Building | 8212 / 4193 / 659 / 5161 / 5615 |
| Chrysler Clock, Madison Avenue | 8573 / 3904 |
| White Cloud over Brooklyn Bridge | 8064 / 4325 |
| Foggy Day on Brooklyn Bridge | 8273 / 4076 |
| Empire State Building, East View | 8113 / 4108 / 661 |
| Brooklyn Bridge | 6332 / 8022 / 8279 / 3864 / 5162 / 5616 / 658 / 114 / 417 |
| Manhattan Skyline | 6305 / 8175 / 4086 |
| Yellow Cab on Brooklyn Bridge | 8211 / 4257 |
| From the Empire State Building, NYC | 6130 / 8107 / 688 |
| Radio City Music Hall Crossing | 8106 |



## Page 2 of ANNEX HENRI SILBERMAN

| | |
|---|---|
| New York by Night | 5619 |
| Brooklyn Bridge Fog | 5617 |
| Empire State Building | 5160 / 5614 |
| Empire State Building, East View | 9814 |
| Empire State Building at Night | 9815 |
| La Tour Eiffel | 8149 / 3985 |
| Empire State Building | 671 |
| La Tour Eiffel | 679 |
| Eiffel Tower Evening | 8138 |
| Bond Street Billboard | 8135 |
| Times Square Crossing | 8137 |
| From the Empire State Building, South View | 6132 |
| Brooklyn Bridge at Night | 8134 |
| Looking at Ground Zero | 8136 |
| New York 2007 | 1506 |
| Empire State Building, NYC | 1516 / 7160 |
| Imagine | 1535 |
| Brooklyn Bridge | 2005 |
| New York, New York | 2230 |

Agreed, Accepted and Signed by:

Signed by the PROPRIETOR

Date: 6/17/10

Signed by the PUBLISHER

Date: _____